UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
DEVI CUSACK,                                                 :
                                                             :
                              Plaintiff,                     :
                                                             :         06 Civ. 6166 (GEL)
                -v.-                                         :
                                                             :         **OPINION AND ORDER**
NEWS AMERICA MARKETING IN-STORE                              :
SERVICES L.L.C.,                                             :
                                                             :
                              Defendant.                     :
                                                             :
-------------------------------------------------------------x

Michael J. Borrelli, Borrelli and Associates, P.L.L.C.,
Carle Place, NY, for Plaintiff.

Blythe E. Lovinger and Leslie M. Ballantyne,
Kasowitz, Benson, Torres & Friedman LLP, New
York, NY, for Defendant.

GERARD E. LYNCH, District Judge:

      Plaintiff Devi Cusack, a former employee of defendant News America Marketing In-Store Services, LLC ("NAMIS"), brings this action alleging claims for discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq., and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq. NAMIS denies that it unlawfully discriminated against Cusack and contends that she was terminated because NAMIS reasonably believed that she acted dishonestly and fraudulently manipulated the company's disability benefits policy. NAMIS now moves for summary judgment on all claims. The motion will be granted.

1

**BACKGROUND**

NAMIS provides "in-store advertising, promotion and sales merchandising services for consumer packaged companies (such as Nabisco, Colgate-Palmolive and Kraft) in retail food and drug stores across the country."  (D. Rule 56.1 Stmt. ¶ 5.)[1]  Cusack, who was thirty-eight years old at the time the complaint was filed in August 2006, worked for NAMIS pursuant to an at-will employment agreement which provided that she could be terminated "by the Company at any time for any or no reason."  (Id. ¶ 4.)  In November 2003, Cusack was promoted to Area Field Merchandising Manager ("Area Manager"), the position she held until she was terminated in November 2005.  (Id. ¶ 3.)

The responsibilities of an Area Manager include "program management, client relations, budget development and hiring, training, supervising, auditing and disciplining in-store representatives."  (Id. ¶ 7.)  The position operates on thirteen four-week cycles per year.  (Id. ¶ 9.)  The first week of each cycle is known as "ad-change week," during which Area Managers are responsible for ensuring that NAMIS representatives visit retail stores and replace advertising displays and marketing materials.  (Id. ¶ 10.)  During the second and third weeks of each cycle, Area Managers ensure that the promotional materials installed in the previous weeks

---

[1] Pursuant to Local Rule 56.1(c), statements set forth in a moving party's Rule 56.1 statement "will be deemed to be admitted unless controverted" by the opposing party's statement.  Cusack failed to submit a timely response to NAMIS's 56.1 Statement, and this Court denied Cusack's application to submit an untimely Rule 56.1 statement after defendant had already filed its reply brief.  (Doc. # 43.)  Although the Court may therefore deem NAMIS's Rule 56.1 statements as admitted, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001).  In this case, rather than deeming admitted the statements set forth in NAMIS's Rule 56.1 Statement, the Court will exercise its discretion to "conduct an assiduous review of the record" despite Cusack's failure to file a timely Rule 56.1 response.  Id. (internal quotation marks omitted).

remain installed in their proper place. (Id. ¶ 11.) The final week of each cycle consists of meetings and preparation for the next cycle's advertising changes. (Id. ¶ 12.)

Of the four weeks in the cycle, the first week is the most time-consuming, sometimes requiring in excess of 10-12 hours of work per day from the Area Managers. (Id. ¶ 13.) Cusack testified at her deposition that Area Managers worked "until the job got done" because "[t]he company had time sensitive materials." (Cusack Dep. 92:15-17.) Cusack stated that the Area Manager position "is not a nine-to-five job," that she "worked generally more than eight hours a day," and that "flexibility" is a requirement. (Id. at 95:15-96:23.) Indeed, Cusack acknowledged that when she began as an Area Manager, she often "worked between 12 and 20 hours a day." (Id. at 95:18-22.) Other NAMIS employees also testified that it was not possible to perform the functions of an Area Manager "working less than eight hours a day[,] [e]specially during ad change week." (Weiss Dep. 90:21-23.)

On September 26, 2005, complaining of various medical problems, Cusack began a medical leave of absence pursuant to the FMLA. (D. Rule 56.1 Stmt. ¶ 17.) During her leave, Cusack was eligible for and received short-term disability benefits from NAMIS. (Id. ¶ 18.) On November 9, 2005, Cusack faxed a Return to Work Certification ("RWC") prepared by her physician to NAMIS Benefit Representative Laura Bailey-Voros. (Id. ¶ 19.) The RWC stated that Cusack was available to resume work beginning on November 21, 2005, but that she had a "permanent" restriction that prevented her from working "more than 8 hours a day." (Id. ¶ 20.)

Upon receiving the RWC, Bailey-Voros informed NAMIS's Director of Field Human Resources, Robert Weiss, of Cusack's eight-hour work restriction. (Id. ¶ 21.) Weiss then contacted NAMIS's employment law counsel, J. Jordan Lippner, who advised him that if Cusack

3

could perform her job within the eight hour per day restriction, she should be reinstated as an Area Manager. (Id. ¶¶ 23-25.) After speaking with several members of NAMIS management, Weiss informed Lippner that it would not be possible to accommodate Cusack's restriction since the Area Manager position requires a flexible schedule, often requiring work days exceeding eight hours. (Id. ¶ 30.) Lippner instructed Weiss to ascertain whether NAMIS had any other positions available for which Cusack was qualified and which could accommodate her eight hour work restriction, and if so, to offer Cusack that position. (Id. ¶ 31.) Weiss determined that given Cusack's restriction, only one such position was suitable and available: In-Store Representative. (Id. ¶ 32.)

On November 15, 2005, Bailey-Voros called Cusack and informed her that as a result of her permanent restriction, she could not return to the Area Manager position but offered her the In-Store Representative position instead, which Cusack declined. (Id. ¶¶ 34-35.) Cusack then told Bailey-Voros that "if [NAMIS] would not accept my restrictions of eight hours a day, I will take the restrictions off. I will do whatever you want." (Cusack Dep. 69:10-12.) Cusack proceeded to ask Bailey-Voros, "what should my restrictions have said? Twelve, 15 or 20 hours? What is expected of this company? Tell me, because I will ask my doctor to change it." (Id. at 170:17-20; see Ballantyne Decl. Ex. 16.) In response, Bailey-Voros told Cusack that she could not instruct her on what to have her doctor write. (D. Rule 56.1 Stmt. ¶ 38.) Later that same day, Cusack called Bailey-Voros back and told her that she had changed her mind and would not ask the doctor to remove the permanent restriction, but instead would ask her doctor to prepare a "revised note" that would state that Cusack was not ready to return to work and needed additional disability leave. (Cusack Dep. 134:4-7; see Bailey-Voros Decl. ¶ 10.) In her

4

affidavit submitted in conjunction with the pending motion, Cusack denies ever asking her doctor to remove the restriction, but nevertheless admits that she told Bailey-Voros that "[w]hatever it took, I told her I would change the restriction." (Cusack Aff. ¶¶ 41, 45.)

Following her conversations with Cusack, Bailey-Voros relayed the substance of those discussions to Lippner, who concluded that Cusack was being dishonest about her permanent restriction in order to manipulate NAMIS's medical leave policy. (D. Rule 56.1 Stmt. ¶ 42.) Lippner testified at his deposition that "any time I've been presented with an act of dishonesty, my recommendation has always been to terminate the employee." (Lippner Dep. 77:24-75:3.) Lippner thus recommended to NAMIS management that Cusack be fired. At Lippner's request, Bailey-Voros prepared a draft termination letter, which was reviewed by Lippner and forwarded to Weiss for him to sign and send to Cusack. (D. Rule 56.1 Stmt. ¶¶ 46-47.) Weiss signed and mailed the termination letter to Cusack on November 15, 2005. (Id. ¶ 48.) The next day, NAMIS received a revised certification from Cusack's physician's office, which stated that Cusack's leave would need to be extended because she was not ready to return to work and should "continue treatment." (Id. ¶¶ 49-50.)

On August 14, 2006, Cusack filed this action alleging that NAMIS terminated her for discriminatory reasons in violation of the ADA, the FMLA, and the New York City and State Human Rights Laws.

# DISCUSSION

## I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court's responsibility is to determine if there is a genuine issue to be tried, and not to resolve disputed issues of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences and resolve all ambiguities in the nonmoving party's favor, and construe the facts in the light most favorable to the nonmoving party. Id. at 254-55. However, summary judgment may be granted "[i]f the evidence is merely colorable, or is not significantly probative." Id. at 249-50 (citations omitted).

The party seeking summary judgment bears the burden of showing that no genuine factual dispute exists. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). Once the moving party has made a showing that there are no genuine issues of material fact, the burden shifts to the nonmoving party to raise triable issues of fact. Anderson, 477 U.S. at 250. A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the nonmoving party. Id. at 248.

## II. Disability Discrimination Claim

Cusack contends that NAMIS engaged in unlawful discrimination by terminating her on account of her disability in violation of the ADA and the New York City and State Human Rights Laws. (Compl. ¶¶ 48-51, 54-57.) Under the ADA,

> [n]o covered entity shall discriminate against a qualified individual
> with a disability because of the disability of such individual in

> regard to . . . the . . . discharge of employees . . . and other terms, conditions, and privileges of employment.

42 U.S.C.A. § 12112(a). The legal standards for discrimination claims under the ADA parallel those under the New York City and State Human Rights Laws for all issues relevant to this case. See Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 104 (2d Cir. 2003); Micari v. Trans World Airlines, Inc., 43 F. Supp. 2d 275, 279 (E.D.N.Y. 1999). Accordingly, the Court's discussion of Cusack's federal ADA claim also disposes of her state and local law disability discrimination claims. See Powers v. Polygram Holding, Inc., 40 F. Supp. 2d 195, 202 n.2 (S.D.N.Y. 1999).

To establish a prima facie case of wrongful termination by reason of discrimination under the ADA, plaintiff must show that: "(1) her employer is subject to the ADA; (2) she suffers from a disability within the meaning of the ADA; (3) she could perform the essential functions of her job with or without reasonable accommodation; and (4) she was fired because of her disability." Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998). If the plaintiff can establish a prima facie case of discrimination under the ADA, the burden then shifts to the employer to put forth a legitimate, nondiscriminatory reason for the employment action at issue. If the defendant carries its burden, then any inference of discrimination drops out and the plaintiff must establish that the legitimate reason is pretextual. See Heyman v. Queens Village Committee for Mental Health for Jamaica Community Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973).

The parties spend considerable energy disputing whether Cusack has met her burden of establishing a prima facie case. The Court need not resolve that question, however, because even assuming *arguendo* that Cusack has made out a prima facie case, NAMIS has met its burden of putting forth a legitimate, nondiscriminatory reason for Cusack's termination —

7

specifically, its belief that Cusack was acting dishonestly and fraudulently in attempting to manipulate NAMIS's disability benefits policy — and Cusack has failed to adduce sufficient evidence of pretext to survive summary judgment.

As the Second Circuit observed in <u>Roge v. NYP Holdings, Inc.</u>,

> it is common sense and entirely lawful for an employer to select for termination an employee who the employer in good faith believes recently engaged in fraud relating to the employment. Whether or not fraud actually occurred, questionable circumstances surrounding an employee's claim for benefits provide a nondiscriminatory reason for choosing to terminate that employee over others . . . .

257 F.3d 164, 169 (2d Cir. 2001). In this case, NAMIS has more than adequately demonstrated the existence of "questionable circumstances" surrounding Cusack's claim for benefits. <u>Id</u>. According to Bailey-Voros, immediately after she informed Cusack that she (Cusack) would not be able to continue working as an Area Manager as a result of her "permanent" eight-hour work restriction, Cusack told Bailey-Voros that (1) it was she, not her doctor, who had come up with the restriction, (2) she had asked her physician to write that restriction on the RWC, and (3) since the restriction was incompatible with the Area Manager position requirements, she would simply ask him to remove it from the RWC. (Bailey-Voros Decl. ¶ 9.) This account is corroborated by Cusack's own deposition at which she candidly acknowledged that she asked Bailey-Voros, "what should my restrictions have said? Twelve, 15 or 20 hours? What is expected of this company? Tell me, because I will ask my doctor to change it." (Cusack Dep. 107:17-20; <u>see</u> Ballantyne Decl. Ex. 16.) Indeed, in her own affidavit submitted in conjunction with the pending motion, Cusack reiterates that "[w]hatever it took, I told [Bailey-Voros] I would change the restriction." (Cusack Aff. ¶ 41.)

8

Although Cusack now contends that she was "crying and hysterical" at the time of her conversation with Bailey-Voros, and that her statement was not "accurate" and was "made under duress" (Cusack Dep. 107:22-25), the issue here is not whether Cusack actually committed intentional dishonesty or fraud, or whether her response was understandable or excusable, or whether NAMIS's zero-tolerance policy with regard to dishonesty is wise or fair. See Roge, 257 F.3d at 169. The question, rather, is whether NAMIS has proffered a legitimate, non-discriminatory reason for firing her. As noted above, Cusack testified at her deposition that she told Bailey-Voros that "if [NAMIS] would not accept my restrictions of eight hours a day, I will take the restrictions off. I will do whatever you want." (Cusack Dep. 69:10-12.) Cusack also admitted telling Bailey-Voros that she would ask her doctor to submit a "revised note" removing the eight-hour per day work restriction and extending her leave. (Id. at 134:4-7; see id. at 107:19-20.) Lippner, NAMIS's employment counsel, testified that when he learned from Bailey-Voros that Cusack "told us that she was ready to return to work, and then decided to change it, that, in my world, was a dishonest and fraudulent attempt to remain out on leave and collect disability benefits." (Lippner Dep. 54:19-23.) Lippner also indicated that whenever he had been presented with an act of dishonesty, his recommendation "has always been to terminate the employee." (Id. 77:24-78:3.) Accordingly, Lippner recommended to NAMIS management that Cusack be fired, and NAMIS's HR Director subsequently concurred with Lippner's recommendation and signed Cusack's termination letter. Based on these undisputed facts, NAMIS management's suspicions concerning Cuscak's disability claims constituted a legitimate, non-discriminatory reason for terminating her.

Because NAMIS has met its burden of production, Cusack has the burden to "present evidence from which a fact-finder could reasonably conclude that the [employer's] reason was pretextual and that the real reason was discrimination." Brennan v. Metro. Opera Ass'n, 192 F.3d 310, 317 (2d Cir. 1999). Cusack has utterly failed to meet this burden. Although she contends that NAMIS "has made numerous inconsistences with regards to how and why Plaintiff was fired," her contentions amount, at best, to mere quibbling over whether "dishonesty" is equivalent to "fraudulently attempting to collect disability benefits." (P. Mem. 23.) NAMIS's stated justification for terminating Cusack has remained entirely consistent. Nor does Cusack present any evidence that NAMIS treated others with disabilities in a discriminatory manner, or that it failed to discipline or fire others suspected of dishonesty who did not have health issues.

In sum, Cusack has not presented sufficient evidence to create a jury question on the issue of whether NAMIS's stated reason for her termination was pretextual. Accordingly, defendant's motion for summary judgment on Cusack's claims of discrimination under the ADA and the New York City and State Human Rights laws must be granted. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) (observing that an employer is "entitled to judgment as a matter of law if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred").[2]

---

[2] In her complaint, Cusack additionally alleges that NAMIS "failed to offer [her] a reasonable accommodation" for her disability. (Compl. ¶¶ 45, 50.) As the Second Circuit has instructed, however, a discharged employee may assert a claim for failure to accommodate only if she proves a causal connection between her employer's failure to provide a reasonable accommodation and her termination. See Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100,

## II. FMLA Claim

Cusack additionally asserts that through her termination, NAMIS unlawfully retaliated against her for taking a medical leave of absence under the FMLA. FMLA retaliation claims, however, are subject to the same McDonnell Douglas burden shifting analysis as ADA claims. See Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 175-76 (2d Cir. 2006). Accordingly, for the same reasons discussed above, Cusack has not made a showing sufficient to establish that NAMIS's asserted reason for terminating her was pretextual, and her retaliatory termination claim under the FMLA fails accordingly.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted.

SO ORDERED:

Dated: New York, New York
July 2, 2008

GERARD E. LYNCH
United States District Judge

---

107 (2d Cir. 2001). As discussed above, the record evidence demonstrates that NAMIS fired Cusack for reasons entirely unrelated to her disability. Indeed, after Cusack declined NAMIS's offer to let her return in a less demanding job, rather than propose any other accommodation, Cusack represented that her doctor's suggested work restriction was not, in fact, necessary and could be altered. It was NAMIS's conclusion that Cusack had been dishonest, rather than any "performance-related deficiencies . . . caused by failure to provide a reasonable accommodation," that caused Cusack to be fired. Id. at 107. Accordingly, even assuming *arguendo* that NAMIS failed to provide Cusack with a reasonable accommodation by not permitting her to work an eight-hour workday as an Area Manager, Cusack has not shown the requisite "causal connection between [NAMIS's] failure to provide a reasonable accommodation and [her] discharge." Id. "[I]t remains essential to a finding of discrimination that plaintiff's disability, or the lack of accommodation to that disability, played a substantial role that *made a difference* to [her] employer's actions." Id. (emphasis added) (internal quotation marks omitted).

11